## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NOAH P. REED**<br>11201 Mikris Dr. South<br>Jacksonville, FL 32225 | : <br> : <br> : <br> : | **CIVIL ACTION** |
| **Plaintiff** | : <br> : | No. 3:17-cv-2052 |
| **vs.** | : <br> : | |
| **TROOPER RONALD MERCATILI**<br>Pennsylvania State Police<br>Troop N Lehighton<br>9170 Interchange Road<br>Lehighton, PA 18235 | : <br> : <br> : <br> : <br> : <br> : | **Section 1983**<br>**Civil Rights Action** |
| **TROOPER GARY N. FEDOR**<br>Pennsylvania State Police<br>Troop N Lehighton<br>9170 Interchange Road<br>Lehighton, PA 18235 | : <br> : <br> : <br> : <br> : | **Jury Trial Demanded** |
| **JOHN DOE STATE TROOPER X**<br>Troop N Lehighton Barracks Supervisor<br>9170 Interchange Road<br>Lehighton, PA 18235 | : <br> : <br> : <br> : <br> : | **FILED**<br>**SCRANTON**<br><br>NOV - 8 2017 |
| **JOHN DOE STATE TROOPER Y**<br>Troop N Lehighton Barracks<br>Station Commander<br>9170 Interchange Road<br>Lehighton, PA 18235 | : <br> : <br> : <br> : <br> : | PER _____ DEPUTY CLERK |
| **JOHN DOE STATE TROOPER Z**<br>Troop N Commander and Division<br>Director of the Pennsylvania State Police<br>250 Dessen Drive<br>Hazleton, PA 18202 | : <br> : <br> : <br> : <br> : | |

1

|                                              |   |
|----------------------------------------------|---|
| **AND**                                      | : |
|                                              | : |
| **JOHN DOE OFFICER(S) 1-X**                  | : |
| **Believed to be Officers of the**           | : |
| **Lehighton Police Department**              | : |
| **124 3rd Street**                           | : |
| **Lehighton, PA 18235**                      | : |
|                                              | : |
| **Defendants**                               | : |

## COMPLAINT

**NOW COMES**, the Plaintiff **NOAH P. REED**, by and through his legal counsel, Joshua E. Karoly, Esquire, and with him Karoly Law Firm, LLC, and does hereby allege and aver the following:

## I.    JURISDICTION AND VENUE

1.    This action is instituted under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments, and under federal law, particularly the Civil Rights Act of 1871 hereinafter referred to as the "Act," as amended, 42 U.S.C. § 1983.

2.    This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, § 1343(a)(3), § 1343(a)(4), and § 1367(a) regarding the principles of pendent and supplemental jurisdiction over related state law claims.

3.    Venue in the Middle District is properly laid pursuant to 28 U.S.C. § 1391, insofar as the alleged unlawful conduct asserted in this Complaint, which

forms the factual and legal basis of the Plaintiff's claims, arose within the geographical limits of this District in general and within the geographical limits of Carbon County, Pennsylvania, in particular.

## II.  PARTIES

4.  Plaintiff Noah P. Reed (hereinafter "Reed" or "Plaintiff") is an adult individual, with a home address of 11201 Mikris Dr. South, Jacksonville, FL 32225.

5.  Defendant Trooper Ronald Mercatili (hereinafter "Mercatili") is an adult individual who, at all times relevant hereto, was a Pennsylvania State Police Trooper assigned to Troop N Lehighton, located at 9170 Interchange Road, Lehighton, Pennsylvania 18235, and was entrusted with the power, under color of law, to enforce the laws of the Commonwealth of Pennsylvania, and to protect the Constitutional rights of those he encounters.

6.  Defendant Trooper Gary N. Fedor (hereinafter "Fedor") is an adult individual who, at all times relevant hereto, was a Pennsylvania State Police Trooper assigned to Troop N Lehighton, located at 9170 Interchange Road, Lehighton, Pennsylvania 18235, and was entrusted with the power, under color of law, to enforce the laws of the Commonwealth of Pennsylvania, and to protect the Constitutional rights of those he encounters.

3

7. Defendant John Doe State Trooper X (hereinafter "Trooper X") is an adult individual, who at all times pertinent to the claims asserted herein, was a Troop N Lehighton Barracks Supervisor who was responsible for formulating and implementing PSP policies and programs and/or supervising the PSP members who were under his command and for reviewing the GIRs of Defendant Troopers Mercatili and Fedor in this matter, and for forwarding them to the Troop N Lehighton Barracks Station Commander, and who was also responsible for issuing Disciplinary Action Reports (hereinafter "DARs") when appropriate.

8. Defendant John Doe State Trooper Y (hereinafter "Trooper Y") is an adult individual, who at all times pertinent to the claims asserted herein, was the Troop N Lehighton Barracks Station Commander who was responsible for formulating and implementing PSP policies and programs and/or supervising the PSP members who were under his command and for reviewing the GIRs and for forwarding them to the Troop Commander / Division Director, and who was also responsible for issuing Disciplinary Action Reports (hereinafter "DARs") when appropriate.

9. Defendant John Doe State Trooper Z (hereinafter "Trooper Z") is an adult individual who at all times pertinent to the claims asserted herein, was the Troop N Commander / Division Director who was responsible, inter alia, for

formulating an Administrative Decision concerning improper conduct committed by any member of the PSP and was responsible for formulating and implementing PSP policies and programs and/or supervising the PSP members who were under his command.

10. These Defendants, John Doe State Troopers X, Y and Z (hereinafter collectively "Supervisory Defendants"), were supervisors within the context of 42 U.S.C. § 1983 because each of them was personally involved with policy determinations, monitoring and enforcement of, among other things, training, defining performance by promulgating rules, or otherwise monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rule making.

11. Each of the above Supervisory Defendants had supervisory responsibilities which were far more extensive than briefly stated above, and each was a "supervisor" of Defendant Troopers Mercatili and Fedor, as that term is utilized in Section 1983 actions, at all times pertinent to the claims asserted herein.

12. To the extent that discovery reveals that any one of the foregoing Supervisory Defendants lawfully designated another person or persons to act as their designee(s), or there was a more senior supervisor responsible, the allegations

of supervisory liability made herein are intended to, and do expressly also apply to said designee/superior.

13.   Defendant John Doe Officer(s) 1 - X (hereinafter referred to as "Doe") is/are adult individual(s) who, at present are unidentified but, at all times relevant hereto, was/were serving in their capacity as sworn officer(s), believed to be members of the Lehighton Police Department, and was/were entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the Ordinances of Lehighton. Defendant Doe(s) was/were entrusted to protect the Constitutional rights of those they encountered and, at all times relevant hereto, was/were acting under the authority and color of law, and acted in concert with one or more of the other individual Defendants in the performance of their actions, or acted independently.

## III.   PRE-DISCOVERY FACTUAL ALLEGATIONS

14.   On May 17, 2015, at or about 1:25 p.m., Plaintiff Noah Reed was occupying the driver's seat of his Dodge pick-up truck, which was lawfully parked in the parking lot of Trainer's Inn, located off Route 209 in Lehighton, Pennsylvania.

15.   Also present in the truck with the Plaintiff was a female occupying the front passenger's seat.

16. Unknown to the Plaintiff, the female apparently had an active warrant for her arrest.

17. Defendant Fedor pulled his marked patrol car behind the Plaintiff's truck, and activated his emergency lights with the apparent intent of taking the female occupant into custody.

18. A few moments later, the female exited the passenger side of the truck, and began to run through the parking lot, around the backside of Trainer's Inn.

19. Fedor, not knowing exactly who he was looking for regarding the active warrant, or what the warrant was based upon, nonetheless exited the vehicle and gave chase.

20. While Fedor pursued the female around Trainer's Inn, the Plaintiff exited the truck from the driver's seat and stood and observed the pursuit from directly in front of his truck.

21. Fedor successfully detained the female in a matter of moments, without incident; and, at about that same time Defendant Trooper Mercatili and Defendant John Doe Officers 1-X (believed to be members of the Lehighton Police Department) arrived on scene in the parking lot of Trainer's Inn.

22. For no apparent reason, Defendant Doe unlawfully placed the Plaintiff in handcuffs and a short time thereafter placed him in the back of a Lehighton Police Department cruiser car.

23. While in custody, and after observing the Plaintiff in handcuffs, the female questioned Fedor, "Why are you arresting him?" to which Fedor responded, "He's detained, I don't know if they are arresting him, we gotta figure out if he is involved."

24. Confused, the female questioned Fedor, "Involved? He was just giving me a ride."

25. During the pursuit of the female, Fedor dropped his key, which Reed kindly picked up and returned to Defendant Doe who was the Lehighton officer who, without cause, had placed him into handcuffs.

26. Doe then returned the lost key to Fedor, explaining that the Plaintiff had actually found the key, and engaged in a conversation with Fedor.

27. Fedor questioned Doe [regarding the Plaintiff], "Is he good, or is he DUI maybe?"

28. Doe responded, "Might be DUI, probably if they were using all night."

29. It is important to note that Doe had almost no interaction with Plaintiff to this point, and certainly performed no tests upon the Plaintiff that could potentially indicate if Plaintiff was under the influence of drugs or alcohol while he was operating a motor vehicle.

30. Defendant Fedor then had a conversation with Defendant Trooper Mercatili, who had arrived on scene a short time prior.

31. Fedor stated to Mercatili that he "doesn't even know what the warrant was
    for," [meaning the female] and that Plaintiff was "probably DUI [Doe] said."

32. Outrageously, and in violation of state law, while the Plaintiff was still
    handcuffed in the back of the Lehighton cruiser car, and before either
    Defendant Trooper Fedor or Defendant Trooper Mercatili had <u>any</u> interaction
    with the Plaintiff, Mercatili and Fedor engaged in the following conversation:

    Mercatili: You mind if I take this? [referring to the Plaintiff's arrest]

    Fedor:     DUI?

    Mercatili: Yeah.

    Fedor:     No.

    Mercatili: I need my twenty (20) for the month (laughing).

    Fedor:     I need mine too, but I'll take this [referring to the arrest of the
    female].

    Mercatili: Huh?

    Fedor:     I need mine too, but I'll take this, I'll let you have him.

    Mercatili: Alright.

    Fedor:     If there is any heroin, I want to see it.

    Mercatili: Oh yeah.

33. The Troopers then had a discussion about illegally searching the Plaintiff's
    truck, and then had their first interaction with the Plaintiff (after already

determining the Plaintiff was going to be arrested for DUI), while he was seated in the rear passenger seat of the Lehighton patrol car.

34. Mercatili informed the Plaintiff the reason for the stop was a warrant issued for the female, and asked the Plaintiff if he was using illegal drugs, which the Plaintiff denied.

35. Mercatili asked the Plaintiff is there is anything [illegal] in his truck, which the Plaintiff also denied.

36. Again, for no lawful reason, Mercatili then removed the Plaintiff from the cruiser car, and searched the Plaintiff (with negative results).

37. Mercatili then told Doe, "I'll put him in my car, cause I'm gonna deal with him," meaning Mercatili wanted credit for the DUI Arrest for his quota requirement, and walked the Plaintiff to his patrol car and placed him in the backseat, still handcuffed.

38. Again, no tests of any kind were administered to the Plaintiff and there was absolutely no basis for arresting the Plaintiff.

39. Mercatili then placed a call on his cell phone to an unknown party, and stated to Fedor and Doe, "I'm taking him for DUI," arresting Plaintiff prior to any SFST's of any kind.

40. It is believed, and therefore averred, that PSP Lehighton (and potentially PSP as a whole) has an unwritten and illegal "quota" system (as evidenced by the

Troopers conversation stated above) regarding arrests and DUIs, and that quota system was the motive for Defendant Mercatili to unlawfully arrest and prosecute the Plaintiff, with insufficient probable cause.

41. Trooper Mercatili and Doe then unlawfully searched the Plaintiff's truck, and its individual contents, and the Troopers engaged in a conversation which resulted in Mercatili and Fedor agreeing that Mercatili would take the Plaintiff for blood, and that they would leave the truck parked where it was, and the Plaintiff's father would retrieve the truck.

42. Trooper Fedor's Mobile Vehicle Recorder (MVR) "dash cam," captured audio and video of the incident as described above, and after the Defendants agreed to unlawfully arrest and unlawfully search the Plaintiff's truck, Fedor discontinued the audio recording, however video of the incident was still being captured.

43. The Defendants continued to do an exhaustive unlawful search of the Plaintiff's unoccupied truck, as well as all bags located within the truck, including those located in the truck bed which would have been outside the reach of either occupant at the time when they were previously occupying the cabin of the truck.

44. After the search, the Defendants returned to their respective cruiser cars, and left Trainer's parking lot, ending the MVR.

11

45. The Plaintiff was then transported to the Lehighton Hospital for a blood draw, to which he consented.

46. At 2:32 p.m. Phlebotomist Jill Shiner drew the Plaintiff's blood and the Plaintiff was released from custody.

47. On November 19, 2015, Trooper Mercatili filed his knowingly false Affidavit of Probable Cause and Criminal Complaint, charging the Plaintiff with criminal charges consisting of: one count of Driving Under the Influence of Alcohol or Controlled Substance in violation of 75 PA Vehicle Code § 3802(d)(1)(i), an ungraded misdemeanor; one count of Driving Under the Influence of Alcohol or Controlled Substance in violation of 75 PA Vehicle Code § 3802(d)(2), an ungraded misdemeanor; and Careless Driving in violation of 75 PA Vehicle Code § 3714(a), a Summary Offense.

48. Mercatili's sworn Affidavit amounts, at a minimum, to the crime of False Swearing, 18 Pa. C.S.A. § 4903.

49. Thereafter, based upon the aforementioned knowingly false documents, the Plaintiff was once again unlawfully placed under arrest, and was unlawfully prosecuted based upon the intentionally fabricated probable cause by Defendant Mercatili.

50. Mercatili stated, in paragraph 4 of his Affidavit of Probable Cause, "REED performed a series of Standardized Field Sobriety Tests. During the Standard

12

Field Sobriety testing REED exhibited numerous signs of intoxication. Based upon my observations, REED was placed under arrest for driving under the influence and transported to the Lehighton Hospital, for a chemical test of his blood."

51. Mercatili affixed his signature to the Affidavit after the following statement, "I, Tpr. Ronald Mercatili, being duly sworn according to the law, depose and say that the facts set forth in the foregoing Affidavit are true and correct to the best of my knowledge, information and belief." Mercatili's knowingly false Affidavit was also sworn and subscribed to before Magisterial District Judge William J. Kissner on November 19, 2015.

52. As is clear from the MVR, Mercatili flat out lied when he stated that he performed the Standard Field Sobriety tests upon the Plaintiff, and that the Plaintiff's arrest was based upon Mercatili's observations during the SFST's that the Plaintiff "exhibited numerous signs of intoxication," based upon those tests.

53. Mercatili continued to promote his lies by creating false police reports, to support his concocted finding of probable cause and to allow him to meet his quota, including creating a knowingly fraudulent Pennsylvania State Police Intoxication Work Sheet.

54.    Mercatili's fraudulent Intoxication Work Sheet went to great lengths to create a narrative of false probable cause based upon never performed tests, including checking boxes stating that the Plaintiff had "Difficulty with cards," and the Plaintiff "Raise[d] [his] Arms" on the 1st nine steps of the Walk and Turn Test, but not the second nine of the same test.

55.    As is crystal clear from the DVD-R created from the MVR, no walk and turn test was ever conducted, and Mercatili himself reached into Plaintiff's pocket to retrieve his ID while Plaintiff's hands were handcuffed behind his back.

56.    The manufactured documents were provided to defense counsel for Plaintiff in his criminal prosecution, as supposed evidence corroborating the propriety of Plaintiff's arrest and prosecution, in an attempt to convince the Plaintiff to plead guilty, despite the Defendants' illegal conduct.

57.    Thankfully, Plaintiff's defense counsel, Attorney Matthew Rapa, obtained the MVR which memorialized the Defendants' illegal conduct and exposed Mercatili's criminal conduct.

58.    Following the filing of a Motion to Suppress based largely upon Defendant Mercantili's criminal behavior, the District Attorney's Office agreed to dismiss the DUI charges, and on June 1, 2017 both DUI charges were dismissed and the Plaintiff pled guilty to the summary offense of Careless

Driving (even though neither Mercatilis's Incident Report nor his Affidavit of Probable Cause indicate that Mercantili observed any careless driving by Plaintiff on the night in question).

59.     The violations identified in the preceding paragraphs are all part of the same subject matter of Constitutional abuse, and frequently occurred, such that factually, each act became a necessary and incremental step in augmenting the Defendants' fraudulent allegations and filings, which culminated in the false and malicious prosecution of the Plaintiff as well as Defendants' attempts to subvert the criminal justice system and the truth-seeking function of the trial process, in an effort to secure an unjust conviction of the Plaintiff.

60.     The true and full nature of the aforementioned Constitutional assault upon the rights of Plaintiff only became apparent to him when he was first able to view the MVR in late 2016, in response to discovery disclosures made to Plaintiff's criminal attorney, Matthew Jared Rapa.

61.     While each of the above acts, when taken by itself in real time, did not reveal to the Plaintiff as a discrete Constitutional violation at the time, when taken as a whole, especially in the context of the MVR's later disclosure, Defendants' designed callous indifference to Plaintiff's federally protected rights, readily appeared.

62.   It is averred upon information and belief that Defendant Mercatili, and possibly other members of the Pennsylvania State Police, have falsely reported DUI observations and/or violations on prior occasions, and that this was a practice and custom, to which the Supervisory Defendants herein were deliberately indifferent, and was one which they condoned, if not encouraged, as more fully set forth hereinafter, at length, especially in light of the stated "quota" requirement.

63.   As a direct and proximate result of the acts, and omissions committed by the named Defendants herein, as detailed above, and as further articulated in the paragraphs which follow, Plaintiff was caused to suffer, inter alia, the following harms, injuries and damages, some or all of which may be permanent and/or continuing in nature:

   a.   loss of liberty;

   b.   invasion of his privacy;

   c.   violation of his due process rights;

   d.   emotional distress and anguish;

   e.   loss of life's pleasures;

   f.   loss of employment, income and shortening of economic horizons; and

   g.   attorney's fees and costs.

64.   In like fashion, and for their part, the Supervisory PSP Defendants, are also jointly and severally liable to Plaintiff based upon the claims, assertions and theories of liability more fully set forth hereinafter.

65.   The acts and/or omissions of the Defendants, or one or more of them, evidenced a deliberate indifference to the rights guaranteed to individuals such as Plaintiff, under the Fourth and Fourteenth Amendments to the United States Constitution, and cognate provisions of the Pennsylvania Constitution.

66.   At all times relevant, the legal principles regarding the rights of persons, such as Plaintiff, and the contours of those Constitutional and statutory rights, were well-established, and it was not reasonable for any Defendant to believe that his actions would not deprive the Plaintiff of those rights.

67.   At all times during the events described herein, the Defendants were engaged in one or more joint ventures which combined to produce the Constitutional violations and other harms asserted herein. The Defendants assisted each other in performing the various actions described, and lent their physical presence, support and/or authority to one another.

68.   The Plaintiff further believes and therefore avers, that without the intervention of this Honorable Court, the Plaintiff, as well as others, may suffer from similar state and federal rights violations in the foreseeable

future similarly and that, consequently, injunctive relief is demanded, and required.

69. The Defendants, individually and collectively, at all times pertinent to the claims asserted herein, acted under color of law.

70. While acting under color of law, the Defendants deprived the Plaintiff of various State and Federal Constitutional rights as more fully set forth herein.

71. At all places where reference to the Pennsylvania State Police is made hereinafter, "PSP" may be used, including reference to all Pennsylvania State Police Defendants collectively as, the "PSP Defendants."

72. The PSP Defendants are sued in their individual capacities pursuant to 42 U.S.C. § 1983 ("Section 1983"), for their actions, all of which occurred under color of law and, accordingly, neither 11th Amendment immunity, nor sovereign immunity applies.

73. Relative to the pendant state claims asserted, the PSP Defendants' acts and omissions are alleged to have been committed outside the scope of their employment, and therefore are not subject to sovereign (state legislated immunity, 1 Pa. C.S.A. § 2310), immunity. The injunctive relief sought against these Defendants is sought in their official capacities for which they are likewise not immunized.

## COUNT I
### 42 U.S.C. § 1983
### Unlawful Seizure / False Arrest
### *Against Defendants Mercatili and Doe*

74.  The preceding paragraphs are incorporated herein by reference as though fully set forth.

75.  The conduct of Defendants Mercatili and Doe constituted unlawful arrests and seizures of the Plaintiff, within the meaning of the Fourth Amendment.

76.  Said arrests and seizures were made by warrantless arrest and were unreasonable and without probable cause in that the facts and circumstances available to the Defendants would not warrant a prudent officer in believing that the Plaintiff had committed or was committing a crime, which would justify his arrest.

77.  The Plaintiff was subjected to these unlawful seizures and arrests in violation of the Fourth Amendment of the United States Constitution.

78.  As a result of the unlawful seizures and false arrests affected upon the Plaintiff, the Plaintiff suffered damages as stated herein.

79.  Defendants Mercatili and Doe are personally liable for their direct involvement in the commission of the acts complained of here.

80.  Supervisory Defendants are liable for the acts of Defendant Mercatili pursuant to the claims and theories expressly set forth hereinafter, and which are incorporated by reference as if set forth et extenso here.

81. Further, the conduct exhibited by subordinate Trooper Mercatili, which occurred on or about May 17, 2015, and November 19, 2015, and thereafter, was not unexpected. Neither were they the deeds of an independent, non-supervisory actor. But, rather, they constituted predictable behavior of a subordinate who operated with perceived impunity due to the deliberate indifference of his supervisors and policymakers, and the joint policies, practices and customs, of all other Supervisory Defendants which operated as the moving force behind what Mercatili believed to be his unaccountable efforts to engage in what had become, all to customary, Constitutional deprivations.

82. The likelihood is that, but for the alleged acts and omissions committed by the other Supervisory Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants Mercatili and Doe, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Middle District of Pennsylvania.

## COUNT II
## 42 U.S.C. §1983
## Unlawful Search
### *Against Defendants Mercatili, Fedor and Doe*

83.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

84.   Freedom from intrusion of the person or their effects is the archetype of the privacy protection secured by the Fourth Amendment.

85.   Warrantless searches are presumptively unreasonable under the Fourth Amendment.

86.   Defendants violated Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983 by conducting a warrantless search of the Plaintiff, his truck, and the contents within his truck. Mercatili unlawfully searched the Plaintiff, his truck and its contents, and Doe and Fedor unlawfully searched the truck and its contents.

87.   Defendants' searches were unlawful in that there was no probable cause for the multiple searches.

88.   Plaintiff suffered damages as a result of the unlawful searches conducted by the Defendants.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants Mercatili, Fedor and Doe, in an

amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Middle District of Pennsylvania.

**COUNT III**
**42 U.S.C. § 1983**
**False Imprisonment**
***Against Defendant Mercatili***

89.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

90.   Defendant Mercatili either individually, or acting in concert, subjected the Plaintiff to false imprisonments in violation of his Constitutionally protected Fourth Amendment rights.

91.   The Defendant deliberately arrested, and thereafter deliberately further detained, the Plaintiff in custody.

92.   Said detentions were unlawful because they lacked probable cause.

93.   The facts and circumstances, which were within the knowledge of the Defendant at the times of Plaintiff's arrests, were not sufficient to warrant a man of reasonable caution to believe that Plaintiff had committed or was committing a crime for which an arrest and imprisonment was authorized under the law.

94.   As a result of being subjected to False Imprisonments, in violation of his Constitutionally protected rights under the Fourth Amendment, Plaintiff suffered the damages alleged herein.

22

95.  Supervisory Defendants are liable for the acts of Defendant Mercatili pursuant to the claims and theories expressly set forth hereinafter, and which are incorporated by reference as if set forth et extenso here.

96.  Further, the conduct exhibited by subordinate Trooper Mercatili, which occurred on or about May 17, 2015, November 19, 2015, and thereafter, was not unexpected. Neither were they the deeds of an independent, non-supervisory actor. But, rather, they constituted predictable behavior of a subordinate who operated with perceived impunity due to the deliberate indifference of his supervisors and policymakers, and the joint policies, practices and customs, of all other Supervisory Defendants which operated as the moving force behind what Mercatili believed to be his unaccountable efforts to engage in what had become, all to customary, Constitutional deprivations.

97.  The likelihood is that, but for the alleged acts and omissions committed by the other Supervisory Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendant Mercatili, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Middle District of Pennsylvania.

## COUNT IV
### 42 U.S.C. § 1983
### Malicious Prosecution
### *Against Defendant Mercatili*

98.  The preceding paragraphs are incorporated herein by reference as though fully set forth.

99.  On November 19, 2015, Plaintiff was falsely charged by Defendant Mercatili via Criminal Complaint, aided and abetted by the malicious acts and potentially additional official false filing(s) of Fedor.

100. The Plaintiff was charged with one count of Driving Under the Influence of Alcohol or Controlled Substance in violation of 75 PA Vehicle Code § 3802(d)(1)(i), an ungraded misdemeanor; one count of Driving Under the Influence of Alcohol or Controlled Substance in violation of 75 PA Vehicle Code § 3802(d)(2), an ungraded misdemeanor; and Careless Driving in violation of 75 PA Vehicle Code § 3714(a), a Summary Offense.

101. On June 1, 2017 the DUI charges were dismissed by The Honorable Joseph J. Matika.

102. The Defendant violated the Plaintiff's Fourth Amendment rights by wrongfully initiating the prosecution of Plaintiff for the crime of Driving Under the Influence of Alcohol or Controlled Substance based upon manufactured probable cause.

103. The aforesaid criminal prosecution was designed, procured, facilitated, and promoted by the Defendant as a pretext, defense and unwarranted justification for the Defendants' unlawful and un-Constitutional violation of the Plaintiff's state and federally protected Constitutional rights.

104. The Defendant lacked probable cause to initiate the said criminal proceeding against the Plaintiff, especially knowing he fabricated the probable cause for the arrest.

105. The criminal proceeding in the case ended in Plaintiff's favor.

106. The Defendant acted maliciously, as stated, or for a purpose other than bringing the Plaintiff to justice, and quite possibly to comply with an illegal quota system.

107. The Plaintiff spent unlawful time in prison as a result of the Defendant's malicious bringing of the unjust criminal charges.

108. Defendant Mercatili is personally liable for his direct involvement in the commission of the acts complained of here.

109. Supervisory Defendants are liable for the acts of Defendant Mercatili pursuant to the claims and theories expressly set forth hereinafter, and which are incorporated by reference as if set forth et extenso here.

110. Further, the conduct exhibited by subordinate Trooper Mercatili, which occurred on or about November 19, 2017, and thereafter, was not

Case 3:17-cv-02052-JMM   Document 1   Filed 11/08/17   Page 26 of 45

unexpected. Neither were they the deeds of an independent, non-supervisory actor. But, rather, they constituted predictable behavior of a subordinate who operated with perceived impunity due to the deliberate indifference of his supervisors and policymakers, and the joint policies, practices and customs, of all other Supervisory Defendants which operated as the moving force behind what the Mercatili believed to be his unaccountable efforts to engage in what had become, all to customary, Constitutional deprivations.

111. The likelihood is that, but for the alleged acts and omissions committed by the other Supervisory Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

112. As a consequence of the criminal proceeding, the Plaintiff suffered a significant deprivation of his liberty, freedom, and monetary losses, and claims damages for the injuries set forth herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendant Mercatili, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Middle District of Pennsylvania.

26

## COUNT V
### 42 U.S.C. §1983
### Violation of Fourteenth Amendment Due Process Rights
### *Against Defendant Mercatili*

113. The preceding paragraphs are incorporated herein by reference as though fully set forth.

114. Mercatili deliberately fabricated and suppressed evidence in an effort to justify his unconstitutional arrest, search and prosecution of the Plaintiff.

115. Defendant Mercatili, *inter alia*, swore out and filed a knowingly false, fabricated, and misleading Affidavit of Probable Cause, Criminal Complaint and Offense Report wrongfully establishing he had probable cause for the arrest, search and prosecution of the Plaintiff.

116. In addition to fabricating false evidence against Plaintiff in his Reports, it is believed and also averred that these fabrications and falsehoods were repeated, at least in part, by Defendant in any other narratives he may have provided before and/or after Plaintiff's prosecution.

117. The aforesaid fabricated evidence was used as a basis for the filing of criminal charges that would not have been filed and/or pursued without its use.

118. Defendant was aware that his own statements were incorrect and offered in bad faith in an effort to secure an unjust conviction of Plaintiff.

119. The fabricated evidence was so significant that it could have affected the outcome of the criminal case and, in fact, in this instance, without the Defendant's fabricated evidence, Plaintiff would not have, inter alia, been arrested, charged and prosecuted, rendering the Defendant's fabrications material.

120. In fact, there exists more than a reasonable likelihood that absent the Defendant's fabricated statements, oaths and reports, all of which falsely attempted to establish probable cause, the Plaintiff would not have been criminally charged.

121. Also, absent the MVR establishing the Defendant's lies, the Plaintiff would not have known of the wholly informed nature of his arrest and the Defendant would have continued to perpetrate the lies, possibly resulting in a conviction and further incarceration.

122. Plaintiff is entitled to the Fourth Amendment's protection against unlawful seizure pre-trial, and to the due process of law guaranteed to him by the Fourteenth Amendment, during the entire criminal proceedings, through and after the imposition of sentence, if any.

123. The Defendant's fabrications are an affront to the due process of law, and state actors like the Defendant who seek to frame citizens like Plaintiff, undermine fairness, and are responsible for the corruption of the truth-

seeking function of the trial process, and thereby provide a stand-alone fabricated evidence claim against the Defendant under the due process clause of the Fourteenth Amendment.

124.  Mercatili engaged in this fabrication intentionally, willfully, wantonly and with a reckless disregard for the rights of Plaintiff, subjecting him not only to the compensatory damages claimed herein, but also to punitive/exemplary damages.

125.  The PSP Supervisory Defendants are liable under the doctrine enunciated in Count VII (Supervisory Liability) for all the acts and/or omissions attributed to the individual Defendant for the reasons more fully expressed therein, and which is incorporated herein as if fully set forth.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor against Defendant Mercatili, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the District Court for the Middle District of Pennsylvania.

## COUNT VI
### 42 U.S.C. § 1983
### Failure to Intervene
***Against Defendants Mercatili, Fedor, Doe and John Doe State Trooper X (and Y and Z if informed)***

126.  The preceding paragraphs are incorporated herein by reference as though fully set forth at length herein.

127. Defendants should have intervened to prevent the unconstitutional acts committed by other Defendants as described in this Complaint.

128. Defendants had a realistic and reasonable opportunity to intervene to prevent the Constitutional violations of Plaintiff's federally protected rights as claimed herein, but did not.

129. Said intervention could reasonably have taken the form of physical intervention in some instances and/or oral communications and/or supervisory intervention and/or authoring of a warranted grievance and/or truthful official reporting concerning the lack of probable cause of Plaintiff's stop, search, arrest and prosecution.

130. Defendants Fedor and Doe had a like duty to disclose, ab initio, the truth regarding all the testing to which Plaintiff was subjected to (or lack thereof), but did not, not even to their superiors, internal affairs, and/or the independent Judiciary.

131. John Doe State Trooper X had a duty to intervene while reviewing Mercatili's fraudulent report, especially in light of the existence of the MVR and especially after Mercatili's veracity came into question.

132. Troopers Y and Z had a duty to intervene if and when Trooper X notified them or they became aware of the unlawful conduct.

133. Defendants failures to intervene, given the realistic and reasonable opportunities made available to them, substantially increased the risk of, if not induced, the violations of Plaintiff's Constitutional rights complained of herein.

134. Defendants failures to intervene render them jointly and severally liable with all other Defendants for all of the harms and damages supported by Plaintiff as alleged herein, including Plaintiff's false arrest, unlawful search, false imprisonment due process violations and malicious prosecution.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants Mercatili, Fedor, Doe and John Doe State Trooper X (and Y and Z if informed), jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Middle District of Pennsylvania.

### COUNT VII
#### 42 U.S.C. § 1983
#### Supervisory Liability
#### *Against The PSP Supervisory Defendants*

135. The preceding paragraphs are incorporated herein by reference as though fully set forth.

136. The, "Supervisory Defendants" exercised supervisory authority over Defendants Mercatili and Fedor, their subordinates.

137.   As such, each is liable for the Constitutional harms and injuries suffered by Plaintiff which are a direct result of the Supervisory Defendants failure to properly train and/or supervise their subordinate Defendants, Mercatili and Fedor, and the Supervisory Defendants concurrent deliberate indifference to the Constitutional rights of persons like the Plaintiff, with whom the untrained and unrestrained Defendants came into contact.

138.   The Supervisory Defendants had personal knowledge of the Constitutional risks associated with their failure to properly train and/or supervise their subordinates, like Defendants, Mercatili and Fedor, regarding the Constitutional harms likely to be inflicted by, and through their stops, arrests and prosecutions, as well as, their quota system which encouraged unlawful arrests, searches, prosecutions and imprisonment of citizens like Plaintiff.

139.   Furthermore, those risks were obvious to all Defendants.

140.   The Supervisory Defendants also each had advanced personal knowledge that the past policies, regulations and practices, including those related to training and discipline and quotas, all of which they were also, directly or indirectly personally responsible for promulgating, monitoring, enforcing and if needed, modifying, were deficient to the

point that they had allowed, if not caused, (and were likely to allow and/or cause in the indeterminate future), Constitutional harms precisely like those which were suffered by Plaintiff here.

141.   Further, in their supervisory capacities, each Defendant had the obligations to, inter alia:

    i.    review departmental records on a regular basis to identify unlawful conduct and to take appropriate action to discipline, deter, and end same, especially where an uncontestable MVR exists memorializing that unlawful conduct, and especially after the Troopers conduct is called into question;

    ii.    eliminate any and all formal, informal, written, unwritten, policy or custom that deals with a quota system of any kind, and appropriately discipline and eliminate instances where members of the Troop have invoked a quota system;

    iii.    see to it that Troopers and other members base their arrests and prosecutions only upon valid probable cause;

    iv.    discontinue any prosecution based upon unlawful behavior by the affiant, especially when evidenced by an MVR;

    v.    properly train subordinates like Defendants Mercatili and Fedor regarding the accurate reporting of, the honest disclosure of, and

the obvious legal ramifications of fabricated evidence and manufactured probable cause;

vii.    establish protocols which are capable of identifying those instances where fabrication may have occurred and where prosecutions based on fabricated evidence and/or manufactured probable cause occurred in the past, in an effort to avoid and/or limit recurrence, by requiring such things as a review of available MVRs to ensure their recorded events match the affiant's testimony (or at a minimum after the affiant's veracity comes into question);

viii.   require each such instance of fabricated evidence and/or manufactured probable cause, to be fully investigated, reported, and appropriately acted upon so as to minimize, if not eliminate, all consequent Constitutional harms to the innocent citizen;

ix.     to establish a system by which they would thereafter identify and promptly and fully respond to patterns of unlawful conduct, especially those which were followed by continued prosecution;

x.      to promptly and openly discipline those members who are found to have acted unlawfully;

xii.    to impose remedial training where needed;

xiii.   to establish, enforce and discipline violations of appropriate rules, regulations and policies regarding the foregoing, and to amend them where necessary so as to avoid Constitutional violations of citizens' rights; and

xiv.   to create a workable policy whereby citizens who are subject to violations of their Constitutional rights are encouraged to report those violations in a prompt, simple, effective and non-retaliatory manner, where they are promptly and fully responded to and, where the citizen is advised of the disciplinary and/or remedial results of his complaint.

142.   The Supervisory Defendants, one and/or all of them were deliberately indifferent to these known obligations and failed to satisfy them, leading directly and inevitably to the Constitutional harms suffered by Plaintiff here.

143.   The Supervisory Defendants, as high-ranking Pennsylvania State Police Officials, tolerated, acquiesced in, condoned and ratified a custom, policy of unlawful pattern of seizures and prosecutions based upon fabricated probable cause within the department, which custom, policy or pattern existed prior to the events complained of here, and which had become widespread.

144.    The Supervisory Defendants failed to establish, promulgate, recommend, monitor and/or enforce appropriate rules, regulations and/or policies directed at eliminating fabricated evidence and/or manufactured prosecutions, which they either knew, or should have known, had produced false arrests, malicious prosecutions and the false imprisonment of citizens in the past; and failed to ensure that subordinate members of the State Police, like Defendants Mercatili and Fedor, were properly trained; supervised and disciplined; and, failed to ensure that their Constitutional violations here and, in other instances, were the proper subject of investigation, discipline, retraining and, otherwise remediated, including by the modification of the aforesaid rules, regulations and or policies, as needed.

145.    The Supervisory Defendants are liable to Plaintiff, jointly and severally, under well-established Section 1983 supervisory liability jurisprudence because they, inter alia:

a.    failed to adopt, implement, monitor and enforce necessary regulations and/or policies to avoid arrests predicated upon fabricated evidence and manufactured probable cause and quota systems;

36

b. failed to adopt, implement, monitor and enforce necessary regulations and/or policies which would readily track the State Police members who engaged in unlawful behavior or who prosecuted citizens based upon fabricated evidence, manufactured probable cause, and/or a quota system;

c. failed to adopt, implement, monitor and enforce necessary regulations and/or policies which mitigated against the unlawful and/or unconstitutional arrest of persons based upon fabrication of evidence and/or probable cause, or a quota system, especially where MVR evidence is available and a Troopers veracity is called into question in a court prosecution;

d. failed to appropriately train members of the state police, including the individual Defendants herein, in avoiding unlawful conduct, and in the proper means of promptly reporting, and responding responsibly to, prosecutions based upon fabrication of evidence and/or manufactured evidence, and a quota system;

e. failed to routinely investigate personnel whose efforts reflected unlawful practices or which produced prosecutions based upon fabricated evidence and/or manufactured probable cause;

f.    failed to adopt policies, practices, regulations and/or procedures to expose, prevent, remediate and/or overcome the aforementioned deficiencies; and

g.    failed to impose remedial training and/or discipline, and/or failed to adopt, implement, monitor and enforce regulations and/or policies calling for same, regarding subordinates who engaged in unlawful conduct or who criminally prosecuted citizens based upon fabricated evidence and/or manufactured probable cause and/or, failed to report same.

146.   These failures on the part of the Supervisory Defendants evidence their actual knowledge and acquiescence in the establishment and maintenance of a policy, practice or custom which was deliberately indifferent to the rights of persons like the Plaintiff, and which directly caused the Constitutional harms he was caused to suffer at the hands of the Supervisory Defendants and subordinate Defendants Mercatili and Fedor.

147.   The Supervisory Defendants were the moving force behind the Constitutional violations of their subordinates because of their failed conduct, as described herein, which exhibited deliberate indifference to

the plight of Plaintiff and all other similarly situated citizens, and their individual and collective Constitutional rights.

148. The Supervisory Defendants' existing custom or practice, without the specific supervisory practices or procedures enunciated herein, created an unreasonable risk that persons like Plaintiff would be the victim of a false arrest, unlawful search, false imprisonment, 14th Amendment violation and malicious prosecution under the circumstances presented here.

149. The Supervisory Defendants were aware that this unreasonable risk existed prior to the time of Plaintiff's Constitutional deprivations and had ample opportunity to avoid and/or eliminate same.

150. The Plaintiff's harm described herein, directly resulted from the Supervisory Defendants' failure to employ the aforementioned subject supervisory practices or procedures.

151. Accordingly, because the Supervisory Defendants established and maintained a policy, practice or custom which directly caused the Constitutional harms alleged by Plaintiff; because there existed a prior pattern of incidents similar to that which occurred here, and were condoned by the Supervisory Defendants who were deliberately indifferent to same; because they failed to adopt and/or enforce rules,

regulations, policies, discipline and/or more training when the need for

same was both great and obvious; and, because they acted as the persons

in charge who had knowledge of, and acquiesced, in their subordinates,

Defendants Mercatili and Fedor's violations, as indicated, they are liable

to Plaintiff for the damages claimed herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award

judgment in Plaintiff's favor and against the PSP Supervisory Defendants, jointly and

severally, in an amount in excess of the One Hundred Fifty Thousand Dollar

($150,000.00) limit for arbitration in the Federal District Court for the Middle District

of Pennsylvania.

## COUNT VIII
### State False Arrest, Unlawful Search and Illegal (False) Imprisonment
### *Against Mercatili, Fedor and Doe*

152.   The preceding paragraphs are incorporated herein by reference as

though fully set forth.

153.   Defendants illegally arrested, unlawfully searched and further illegally

imprisoned Plaintiff.

154.   As a result of their false arrest, unlawful search and illegal imprisonment,

Plaintiff suffered the damages stated herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award

judgment in Plaintiff's favor and against Defendants Mercatili, Fedor and Doe, jointly

40

and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Middle District of Pennsylvania.

## COUNT IX
### State Malicious Prosecution
### *Against Defendant Mercatili*

155.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

156.   Defendant initiated, encouraged, planned or facilitated, the bringing of criminal proceedings against Plaintiff and did so maliciously and without probable cause, resulting in a dismissal of charges against the Plaintiff.

157.   As a result of said malicious prosecution, Plaintiff suffered damages as aforesaid.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendant Mercatili, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Middle District of Pennsylvania.

## COUNT X
### State Constitutional Violations
### *Against All Defendants*

158.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

41

159. The conduct of the Defendants, as alleged herein, was violative of the Plaintiff's rights under the cognate provisions of the Pennsylvania Constitution which have either been interpreted as being co-extensive with the rights afforded to the Plaintiff under the United States Constitution, or more extensive than those rights as interpreted by our Supreme Court.

160. To the extent that Plaintiff's ability to assert a private cause of action for damages under the Pennsylvania Constitution has not been settled by the Supreme Court of Pennsylvania, Plaintiff preserves those claims.

161. To the extent that Plaintiff's ability to assert a claim for injunctive / equitable relief has been confirmed by all Courts of competent jurisdiction, including the Pennsylvania Supreme Court, Plaintiff herewith asserts: that without the grant of appropriate injunctive equitable relief by this Court, the acts of the Defendants which gave rise to this action, will continue unabated; that monetary damages alone would not act as a sufficient deterrent to future unConstitutional conduct by these Defendants and each of them; and that the likelihood of the Plaintiff, and others similarly situated, being subjected to future Constitutional deprivations by these Defendants, or one or more of them, is real and not imagined, and even likely.

162.    Accordingly, Plaintiff hereby claims not only the right to damages as alleged herein should that right be recognized by the Pennsylvania Supreme Court, but also to equitable relief sufficient to prevent the Constitutional violations asserted here from recurring, and that such equitable relief be awarded in whatever form the Court deems right and just so to do.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Middle District of Pennsylvania, together with such other injunctive relief as this Court deems to be just and proper to award.

## OTHER

163.    Plaintiff respectfully requests a jury trial.

164.    The within case is not subject to arbitration.

165.    Where permitted, the Plaintiff demands reasonable legal fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages and any other damages deemed appropriate by the Court.

166.    Plaintiff requests that this Honorable Court issue declaratory and injunctive relief, as appropriate, declaring the within described practices to be unlawful, and enjoining their present and continued manifestations.

163.    The conduct of each Defendant was willful, wanton, deliberate, intentional and calculated to bring about the very Constitutional harms which were visited upon Plaintiff and constitute reprehensible and outrageous acts not to be tolerated in a civilized society, warranting the imposition of punitive as well as compensatory damages.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court for each Count alleged:

a.    Award compensatory damages to Plaintiff against the named Defendants, jointly and severally, in an amount in excess of $150,000.00 per Count exclusive of interest and costs;

b.    Award punitive damages to Plaintiff against the individual Defendants in their personal capacities, jointly and severally, in an amount in excess of $150,000.00 per Count exclusive of interest and costs;

c.    Award reasonable attorney's fees and costs to the Plaintiff, as may be awardable pursuant to 42 U.S.C. Section 1988, the Civil Rights

Attorney's Fees Award Act of 1976, or any other applicable law or provision;

d.   Enter an Order enjoining Defendants from engaging in the future in the conduct identified in the Complaint as violative of 42 U.S.C. §§ 1983 and the 4th and 14th Amendments of the Constitution of the United States, the cognate provisions of the Pennsylvania Constitution; and further affirmatively requiring the Defendants to engage in appropriate remedial efforts to adopt, and enforce, policies that are calculated and intended to preclude the conduct alleged to have been engaged in by the Defendants named herein, including the imposition of appropriate outside monitoring, to be paid for by the Defendants, jointly and severally; and

e.   Award such other and further relief, as this Court may deem appropriate.

Respectfully Submitted,
KAROLY LAW FIRM, LLC

Dated: November 8, 2017          By: 

Joshua E. Karoly, Esquire
PA Attorney I.D. # 206076
527 Hamilton Street
Allentown, PA  18101
(610) 437-1252
j.karoly@karolyfirm.com

45